1

# UNITED STATES COURT OF APPEAL FOR FEDERAL CIRCUIT

## CARL E. NEWHOUSE
### Pro Se Appellant

### V.
## UNITED STATES AIR FORCE
### Defendant

### Appeal From MSPB Docket # SF-0752-23-0400-I-1

**Carl Newhouse, Pro Se**
**1328 Market Street Apt. 215**
**Tacoma, WA 98402**
**253-259-4685**
**resilient.rls@gmail.com**

RECEIVED

APR 14 2025

United States Court of Appeals
For the Federal Circuit

# APPENDIX OF UPLOADED RECORDS IN CASE
## Upload in 2023

**Appendix 1 ……………………….. Copy of Teleworking Agreement**

**Appendix 2 ……………………….. Appellant's Job Appraisal**

**Appendix 3 ……………………….. Accommodation Letter**

**Appendix 4 …………………...…. Appellant's Declaration**

## Violations of  Legal Authorities

# Article 131

**RCW 9A.72.060**

18 U.S. Code § 1621 & 1623

# APPELLANT'S REQUEST FOR JUDICIAL REVIEW of PERJURY

In accordance with 5 U.S.C. § 7703(b)(1)(A), the Appellant requests a Judicial review of the Final Order of Merit System Protection Board's March 27, 2025 decision, rendered by Vice Chairman Chief Henry J. Kerner and member Cathy J. Harris because of erroneous finding of material facts in the Merit System Protection Board's ADA Case of *Carl E. Newhouse v. United States Air Force.*

## MATERIAL FACTS

In the Merit System Protection Board's 13 page decision, the record will show that their decision refers to the word "accommodation" approximately 23 times but never mentioned the word **"Perjury."** . The focus of the case should have addressed the question: ***"Did the Air Force commit perjury before they decided to establish ADA accommodations, accommodations that were based on, and created because of their false statement?"***

### What is Perjury?

The law says Perjury is the act of knowingly making a false statement under oath or affirmation, or signing a document known to contain false statements, that is material to the matter at hand.

### The Act of Perjury in The Newhouse Case

In establishing ADA disability accommodations for the disabled Pro Se Appellant, Carl Newhouse, the Agency falsely stated the following under the penalty of perjury in their December 9th Accommodation Letter: ***"The critical duties** [of Newhouse's Community Support Coordinator's position] **require regular and in person customer interaction that cannot be duplicated in a Teleworking Environment.***    [See Appendix 3

4

Accommodation Letter for Statement]. The Agency intentionally made the false statement under the penalty of perjury to justifiably deny the Appellant accommodations recommended by his doctor so they could create their own. The statement was not only an intentional lie, but one that established the foundation for ADA accommodations in this case. The lie was clearly an intentional act of perjury.

*"The agency's Disability Program Manager denied his* (Newhouse's doctor's) **request** [for Accommodations] **on December 9, 2021** *Id. at 33.* [Page 4 of MSPB's Final Order]: (See Appendix 3 Agency's Accommodation Letter)

## When can the court or an agency ignore perjury in a Legal case? The law says:

No person shall be convicted of perjury or false swearing if he or she retracts his or her false statement in the course of the same proceeding in which it was made, if in fact he or she does so before it becomes manifest that the falsification is or will be exposed and before the falsification substantially affects the proceeding. **RCW 9A.72.060**

### MSPB's Policy on Perjuy says:

**Perjury,** regardless of where it occurs, including in an MSPB hearing, is considered a **federal crime**. If someone commits perjury in an MSPB (Merit Systems Protection Board) case, they could face criminal charges, including potential jail time and fines, as perjury is a federal crime punishable under 18 U.S. Code § 1621, with penalties that can include up to five years in prison and significant fines depending on the severity of the case.

Aside from criminal penalties, the MSPB itself can take disciplinary action against an individual found to have committed perjury in their case.....

4

5

**The Air Force Honor Code says:**

*"We (the Air Force) will not lie, steal or cheat nor tolerate anyone who does."*

**On November 3, 2023, the Honorable Stephanie Miller, MSPB's Administrative judge in this case issued the following order regarding "perjury.":**

*On November 1, 2023, the appellant filed a "Pretrial Motion," raising issues of **perjury, withholding of evidence, and obstruction of justice** "as an addendum" to his response to the agency's close of record submission. IAF, Tab 35 at 4.*

*As there is no trial in this appeal…. I construe the submission to be, as stated therein, simply an "addendum" to the appellant's submissions requiring no response from the agency. Id. Should the agency believe it is entitled to respond to the "Pretrial Motion,"*

*I **ORDER** that the agency file its response no later than **November 6, 2023***

As of March 27, 2025, the date of MSPB final decision), there has been no response from the Agency regarding their acts of **Perjury, Withholding evidence and Obstruction of Justice** and no explanation or an apology as to why they lied.

**CLEARLY, PERJURY IS A FEDERAL CRIME, NO EXCEPTION, NO EXCUSES AND NO ONE IS ABOVE THE LAW INCLUDING THE AIR FORCE'S ATTORNEY.**

According to RPC .3.3(a) (4) (a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

When Major Benjamin Signer failed to *"correct a false statement of material fact" that he knew was not true, he violated Rules of Professional Conduct.* The Department of Defenses' Teleworking Agreement shows that **the statement that Major Benjamin Signer submitted on behalf of his client (the United States Air Force) was a lie** and that he was complicit in the act of perjury which is a violation of RPC

6

3.3(a) (4) and Article 131. Not only did he violate RPC 3.3 (a) and Article 131, he chose to withhold evidence (i.e. the Teleworking Agreement) signed by Newhouse and the Air Force. Signer submitted over 1,000 documents on behalf of his client, in an attempt to prove their case, many of the documents had nothing to do with the case. The document that he chose not to submit was the Teleworking Agreement which proved that his client lied (and committed perjury), when they stated that the **"The critical duties of the CSC could not be duplicated in a Teleworking environment."** The false statement was submitted as a key material fact in the case and a violation of Article 131:

: "Article 131 of the Uniform Code of Military Justice (UCMJ) covers perjury, encompassing giving false testimony or subscribing to false statements, and obstruction of justice, including actions to influence or impede the administration of justice

Despite the fact that the Agency clearly and intentionally made the false statement under the penalty of perjury,  the Board took no action against Benjamin Signer or the Air Force for this criminal act and allowed the false statement to set the stage for their ADA accommodations and paved the way for other false statements in this case. The Board also ignored the Appellant's sworn Declaration documenting his work in a Teleworking Environment (See Appendix 4 Appellant's Declaration ).

In its 13 page decision, the MSPB Board **erroneously** stated the following regarding the work that the Appellant did when the Air Force previously ordered him to do his job in a Teleworking environment because of the 2020 Covid pandemic.

[Page 3  of MSPB Decision - Final Order] "She [the Administrative Judge] credited the declaration of the appellant's first-level supervisor that 5 half days per week of telework was inconsistent with the appellant's essential duties and that other employees had been required to fulfill his duties when he teleworked in the past. ID at 15-16. The administrative judge was not convinced by the appellant's argument that the fact that

7

the agency had 100% telework due to the pandemic demonstrated that he could perform his duties remotely full-time."

Regardless of what the MSPB Administrative Judge may have thought, the records will show that no one other than the Appellant performed the critical functions of the Community Support Coordinator's (CSC's) job during the Teleworking period (See Appendix 1 Teleworking Agreement).  The Appellant is the only person on base that holds the position of Community Support Coordinator (CSC) and the only person who signed a Teleworking Agreement to perform *all* of the critical duties of this position in his home.  He was the only person who was given a laptop computer to specifically perform these critical duties. He was the only one who had access to the files and the  records of the CSC office.  During the pandemic, much of the base was closed.  Despite what the judge may have felt, the judge failed to produce one piece of evidence or a Teleworking Agreement to prove that others helped the Appellant to do his job during this Teleworking period. The Board provided no such  documents or a Teleworking Agreement to support her claim.

## The Appellant's Job Performance

The Appellant is the only person who uploaded a copy of his Job Appraisal to document his job performance during the Teleworking period (See Appendix 2 Job Appraisal). Despite comments from others, his Job Appraisal states the following:

[Newhouse] *Designed, executed and utilized quarterly CABs to meet commander's needs at all Wing levels through the integration of Joint Base Partners and AF helping agencies.* [He] ***Overcame several obstacles with COVID (safety, technology, equipment) to execute all CABs on time*** *with all key resources needed to be effective.  In addition to tracking and identified trends, continued to tell "what does this mean" to Commanders along with offering recommendations to fix any issues.* ***Job Rating: "OUTSTANDING"***

7

[Newhhouse] *Coordinated and led all CAT meetings to promote collaboration between all agencies used to identify trends and solve problems.* **_Continued to foster relationships_** *with all helping agencies (JB and 62AW owned) to assure our commanders are armed with all the tools needed to succeed.* **Job Rating: "OUTSTANDING"**

[Newhouse] *Superb management of the Airmen Resilience Center and giving our Airmen a place to go for training, relaxation and professional advice.* **_Excellent job in organizing and executing several key spouse forums_** *for the Wing, continued to utilize SMEs to address and solve resiliency issues.* **Job Rating: "OUTSTANDING"**

## Appellant's Qualified Disability

The records will show that the Appellant performed the essential duties of his job with or without reasonable accommodations, including performing his job when given extra duties beyond the scope of the job he was hired to do. According to Newhouse's Internal Medicine Doctor, his Cardiologist, his Neurologist, and the Medical Evaluators from the Mayo Clinic, they collectively determined that his disabilities included: **_diabetes, a long history of intermittent syncope and symptoms that are consistent with Long Covid; including ongoing migraines, delayed cognitive processing, sensitivity to light, blurry vision, chronic fatigue, and PTSD_** all of which contributed to a near fatal car accident on the I-5 freeway.

## Agency Breaks The Law

Clearly the Agency committed perjury and violated **Article 131**, **RPC 3.3**, and 18 U.S. Code § 1621 on a major Material Fact in the case by stating that the job of Community

Support Coordinator **"cannot be duplicated in a Teleworking Environment"** and based on that lie, denied accommodations recommended by Newhouse's doctors. The Agency crimes include:

(a) Perjury - Violations of RPC .3.3, Article 131 - 18 U.S. Code § 1621

(b) Withholding Evidence

c. And an obstruction of Justice

They made this false statement even though they had a copy of a signed Teleworking Agreement (that they intentionally withheld) which verified that the CSC job **could be done, was done, and ordered by the Air Force to be done by the Appellant in a Teleworking Environment.** Most attorneys will tell their client to **withhold** documents which may prove that their client has committed perjury. Such is the case with the Air Force. They intentionally withheld the Teleworking Agreement and included the false statement **in all of their briefs** to justify rejecting the Appellant's doctor's recommendation for accommodations to create their own, [which is an obstruction of justice]. One year earlier (2020) the Air Force did four things: **(1)** ordered the Appellant to do his job in a teleworking environment, **(2)** had him to sign a Department of Defense Teleworking Agreement to document the assignment, **(3)** gave him a computer to do the Teleworking assignment, **(4)** then gave him an "outstanding Job Performance Rating" for a job well done (as previously shown).

## Accommodations for Re-Evaluations Never Happened

On December 9, 2021, the Agency (Air Force) presented their final accommodations without the input of Newhouse's medical team or the Air Forces Medical Professionals. In doing so, they chose not to address three of Newhouse's doctors recommendations for accommodations to assist with work performance. Their Final Accommodation

10

Letter promised to set up a meeting to re-evaluate accommodations  30 days from the date of the December 9th Letter (See Appendix 3  Accommodation Letter).

From January 9. 2022 to March 12, 2022 the Agency violated the terms of the December 9th Accommodations by **choosing not** to have a meeting to ***re-evaluate*** the effectiveness of their Accommodations.

January 10, 2022    No meeting on re-evaluating accommodations

January 11, 2022    No meeting on re-evaluating accommodations

January 12, 2022    No meeting on re-evaluating accommodations

January 13, 2022    No meeting on re-evaluating accommodations

January 14, 2022    No meeting on re-evaluating accommodations

January 15, 2022    No meeting on re-evaluating accommodations

January  16, 2022    No meeting on re-evaluating accommodations

January  17, 2022    No meeting on re-evaluating accommodations

January  18, 2022    No meeting on re-evaluating accommodations

January 19, 2022    No meeting on re-evaluating accommodations

January 20, 2022    No meeting on re-evaluating accommodations

January 21, 2022    No meeting on re-evaluating accommodations

January 22, 2022    No meeting on re-evaluating accommodations

January 23, 2022    No meeting on re-evaluating accommodations

January 24, 2022    A Disciplinary meeting but no meeting on evaluating accommodations

January 25, 2022    No meeting on re-evaluating accommodations

11

Contrary to what the Agency expressed in their "Accommodation Letter," from October 2021 to March of 2022 (the date of the Appellant's resignation), the Agency ignored emails from the Appellant regarding his health and increased workload and **after** December 9th 2021, the Agency **never** met with the Appellant to re-evaluate accommodations as they had **promised** in their Accommodation Letter. **Choosing or deciding not to meet (as promised)  to see if re-adjustment were needed, was dishonest and showed that the Agency was not concerned with the Appellant's declining health.**

On October 3, 2023, the Appellant Filed an Appeal documenting MSPB's  errors and cited the Agency's acts of perjury, withholding evidence and obstruction of Justice - violations of Article 131, RPC 3.3 and  18 U.S. Code

# Summary

It is an undisputed material fact that the Agency never sought approval or the input from medical professionals before finalizing their plans for accommodations.   The Final Accommodations were decided by the same individuals **who committed perjury** to justify developing their own.  The Agency chose not to address three of the doctor's most critical recommendations for accommodations that were designed to improve the Appellant's job performance: (1) Control conditions in the workplace, (2) Manage in-person interactions and (3) Support health and safety concerns when the Appellant was required to use his personal vehicle to attend company required community meetings both on and off the base.

Case 25-1507, Document 1-2, Page 44 of 237
Case 1:25-cv-07017-TL Document 22-3 Filed 04/28/2025 Page 12 of 38    (44 of 237)

12

Committing perjury, neglect and refusing to talk with the Appellant's doctors is not what ADA had in mind when employers are required to address and establish **final** accommodations for disabled workers.

ADA Officials never wanted the employer to lie [commit perjury] to justify rejecting the doctor's recommendations for accommodations in order to create **final** accommodations **without the input of medical professionals'**.

ADA officials never wanted the Agency to lie and renege on their promise to re-evaluate accommodations 30 days from the December 9th 2021 date as part of the healing process for the Appellant. The Agency's accommodations fell short of all of the above and their perjury statement not only violated criminal law and Article 131, it violated the **Air Force's Honor Code** which says the following:

*"We will not lie, steal or cheat nor tolerate anyone who does."*

*Every Judge in America considers perjury as **a serious crime** and sincerely believes that **no one is above the law**. The Act of perjury in this case set the stage for accommodations, accommodations that were never recognized or approved by the Appellant's medical team.*

## PERJURY In MSPB CASES

MSPB overlooked the fact that Perjury, regardless of where it occurs, including in an MSPB hearing, is considered a federal crime. If someone commits perjury in an MSPB (Merit Systems Protection Board) case, they could face criminal charges, including potential jail time and fines, as perjury is a federal crime punishable

13

under 18 U.S. Code § 1621, with penalties that can include up to five years in prison and significant fines depending on the severity of the case.

Aside from criminal penalties, the MSPB itself can take disciplinary action against an individual or an employer found to have committed perjury in their case, but in this case, they chose not to.

## Appellant's Request

Being a victim of the Agency's acts of Perjury and neglect, the Appellant has fought for over three years (from October 2021 to March 2025) to achieve justice, while suffering from the loss of wages, health insurance, and retirement benefits, along with pain and suffering. It all started with the crime of perjury and he now requests for full restitution.

Submitted this 1st day of April 2025 under the penalty of perjury by

Carl Newhouse, Pro Se

# CERTIFICATE OF SERVICE

# Two copies of the Appellant's brief for Judicial Review
# was served via U.S. Priority Mail to:

## Major Benjamin Signer

**Attorney of Record**
**Andrew Air Force Base**
**Andrew Air Force Base, MD 20762**

**April 8, 2025**

# APPENDIX 1

## Appellant's Teleworking Agreement

## Uploaded in 2023

# DEPARTMENT OF DEFENSE
## TELEWORK AGREEMENT

### PRIVACY ACT STATEMENT

**AUTHORITY**: 10 U.S.C. 113, Secretary of Defense; DoD Instruction 1035.01, Telework Policy.

**PRINCIPAL PURPOSE(S)**: Information is collected to register individuals as participants in the DoD alternative workplace program; to manage and document the duties of participants; and to fund, evaluate and report on program activity. The records may be used by Information Technology offices to determine equipment needs, to ensure appropriate safeguards are in place to protect government information, and for assessing and managing technological risks and vulnerabilities.

**ROUTINE USE(S)**: None.

**DISCLOSURE**: Voluntary; however, failure to provide the requested information may result in your inability to be a participant in the telework program.

### TERMS OF TELEWORK AGREEMENT

The terms of this agreement must be read in conjunction with Department of Defense (DoD) telework policy, available on the DoD Issuances Web Site at http://www.dtic.mil/whs/directives/ or on the Civilian Personnel Management Service Web Site at www.cpms.osd.mil and any additional guidance provided by the employing organization. Signatories certify they will abide by this agreement, DoD telework policy, and all supplemental terms established by the employing organization.

1. Work schedules and hours of duty may be modified as necessary, but are subject to local management procedures and approval and/or collective bargaining agreement requirements. A copy of the employee's approved work schedule should be kept on file with the signed telework agreement. In emergency situations (as indicated in Section I, Block 12 of the telework agreement), the teleworker's work hours may be subject to change. Emergency schedules will be set based on mission needs.

2. If the employee reports to the regular worksite at least twice per pay period, the regular worksite is the official worksite as defined in part 531.605, subpart F of title 5, Code of Federal Regulations.

   If the employee does not report to the regular worksite at least twice each biweekly pay period, the official worksite is the location of the employee's telework site. Exceptions to the twice each biweekly pay period requirement may be made during emergencies (including a pandemic) and for short-term situations (e.g., special projects, medical accommodation).

3. All pay (to include locality pay or local market supplement), leave, and travel entitlements are based on the employee's official worksite as documented on a Notice of Personnel Action.

5. Prior to signing this Telework Agreement, the supervisor and employee will discuss:

   a. Office procedures (e.g., procedures for reporting to duty, procedures for measuring and reviewing work, time and attendance, procedures for maintaining office communications);

   b. Safety, technology and equipment requirements; and

   c. Performance expectations.

6. Employee will not work in excess of the prescheduled tour of duty (e.g., overtime, holiday work, or Sunday work) unless he or she receives permission from the supervisor. By signing this form, the employee acknowledges that failure to obtain proper approval for overtime work may result in cancellation of the telework agreement and may also include appropriate disciplinary action.

7. If designated employee (as indicated in Section I, Block 12 of this agreement) is unable to work due to illness or dependent care responsibilities, the employee must take appropriate leave. Supervisors may, on a case-by-case basis, administratively excuse a designated teleworker from teleworking if circumstances, such as a power failure or weather related emergency, prevent the employee from working at the telework site. To the extent practicable, managers will include a description of emergency duties with this agreement if emergency duties are different from the employee's prescribed duties and responsibilities.

8. Teleworkers may be required to return to the regular worksite on scheduled telework days based on operational requirements. In situations where the employee is called to return to the office outside normal work hours, the recall shall be handled in accordance with established policy and/or collective bargaining agreements, if applicable.

9. If the employee uses Government-furnished equipment (GFE), the employee will use and protect the equipment in accordance with the DoD Component's procedures. GFE will be serviced and maintained by the Government.

10. The employee agrees to comply with the terms of computer software license and copyright agreements, computer virus and protection requirements and procedures.

11. **No classified documents (hard copy or electronic) may be taken to, or created at, an employee's alternative worksite.** If classified telework is authorized at an approved alternative secure location, teleworkers must comply with the procedures established by DoD 5200.01-R and the DoD Component regarding such work. **For Official Use Only (FOUO) and controlled unclassified information (CUI) data may be taken to alternative worksites if necessary precautions are taken to protect the data, consistent with DoD regulations.**

12. When CUI including competition sensitive or source selection data is authorized for use at the telework location, criteria for the proper encryption and safeguarding of such information and data must be consistent with Enclosure 3, subparagraphs 3.f.(1) through (3) of DoDI 1035.01, Telework Policy. Component specific instructions must be included in the space allowed for Component specific comments or cite the appropriate Component references that contain these instructions.

13. The supervisor will determine how frequently, if at all, backup copies of data onto network drives or removable disks must be made to protect against loss of data. The supervisor may also require the employee to periodically send backup copies to the main work facility.

14. The employee may be reimbursed for authorized expenses (e.g., installation of broadband or telephone lines) incurred while conducting business for the Government, as provided by statute and implementing regulations and as articulated in this agreement. (Approved authorizations are filed with this agreement.)

15. **The employee will apply approved safeguards to protect Government records from unauthorized disclosure or damage and will comply with Privacy Act requirements set forth in the Privacy Act of 1974, and codified at section 552a of title 5, United States Code.** The use of personal email accounts for transmission of Personally Identifiable information (PII) is strictly prohibited. PII may only be emailed between government email accounts and must be encrypted and digitally signed.

16. The DoD Component may inspect the home worksite, by appointment only, if the DoD Component has reason to suspect that safety standards are not being met and GFE is not being properly maintained.

17. The DoD Component will not be responsible for operating, maintenance, or any other costs (e.g., utilities) associated with the use of the employee's residence.

18. The DoD Component is not liable for damages to an employee's personal or real property while the employee is working at home, except to the extent the Government is held liable by the Federal Tort Claims Act or from claims arising under the Military Personnel and Civilian Employees Claims Act.

---

**DD FORM 2946, DEC 2011**          PREVIOUS EDITION IS OBSOLETE.          Terms and Conditions
Adobe Professional 8.0

**TERMS OF TELEWORK AGREEMENT** *(Continued)*

19. Employees paid from appropriated funds are covered under the Federal Employee's Compensation Act if injured in the course of performing official duties while at the official alternative worksite. Employees paid from nonappropriated funds are covered under the Longshore and Harbor Workers' Compensation Act. Any accident or injury occurring at the alternative workplace must be brought to the immediate attention of the supervisors who will investigate all reports as soon as practical following notification.

20. The employee acknowledges that telework is not a substitute for dependent care.

21. The employee acknowledges that telework is a discretionary alternative workplace arrangement. The employee may be required to work at the regular worksite on scheduled telework day(s) if necessary to accomplish the mission.

22. Either the employee or the supervisor can cancel the telework agreement. When possible, advance written notice should be provided. Management will terminate the telework agreement should the employee's performance or conduct not meet the prescribed standard or the teleworking arrangement fail to meet organizational needs.

23. The employee continues to be covered by DoD Component standards of conduct while working at the alternative worksite.

24. The employee has assessed the telework location against the attached safety checklist and certifies the location meets all safety requirements.

25. DoD Component-specific conditions may be included below.

## COMPONENT-SPECIFIC TERMS AND CONDITIONS

- Must use GFE (Laptop)
- Transfer work phone to phone at telework location

Terms and Conditions (Back)

# DEPARTMENT OF DEFENSE
# TELEWORK AGREEMENT

*(Read Privacy Act Statement and Terms of Agreement before completing this form.)*

## SECTION I - This document constitutes the terms of the telework agreement for:

| 1. EMPLOYEE *(Last Name, First, Middle Initial)* | 2. OFFICIAL JOB TITLE |
|---|---|
| NEWHOUSE, CARL E | COMMUNITY SUPPORT COORDINATOR |

| 3. PAY PLAN/SERIES/GRADE/PAY BAND | 4. ORGANIZATION |
|---|---|
| GS-12 | 62 AW/CVB |

| 5. REGULAR OFFICIAL WORKSITE *(Street, Suite Number, City, State and ZIP Code)* | 6. ALTERNATE WORKSITE ADDRESS *(Street, Apartment Number, City, State and ZIP Code) (May be TBD under emergency situations)* |
|---|---|
| 100 COL JOE JACKSON BLVD<br>SUITE 3010<br>McCHORD FIELD<br>JBLM, WA 98438 | 1328 MARKET STREET<br>UNIT 215<br>TACOMA, WA 98402 |

| 7. ALTERNATE WORKSITE TELEPHONE NUMBER *(Include Area Code)*<br>253-259-4685 | 8. ALTERNATE WORKSITE EMAIL ADDRESS *(Address for official emails if different from office email address. Identification of personal email address is not required.)*<br>N/A |
|---|---|

| 9. TELEWORK ARRANGEMENT IMPLEMENTATION DATES<br>*(Agreement should be revalidated at least once every 2 years)* | | 10. TOUR OF DUTY *(X one) (Attach copy of biweekly work schedule)* |
|---|---|---|
| a. START *(YYYYMMDD)*<br><br>20200328 | b. END *(YYYYMMDD)*<br><br>20200531 | ☐ FIXED<br>☒ FLEXIBLE<br>☐ COMPRESSED |

**11. TELEWORK ARRANGEMENT** *(X one)*

☐ REGULAR AND RECURRING  ☒ SITUATIONAL

Regular and Recurring Telework Schedule: _____5_____  Number of Days per Week or Pay Period

_____ Days of the Week (e.g., Mon, Wed, Thur)

All employees who are authorized to telework on a **Regular and Recurring** or **Situational** basis to include **emergency situations** shall have a telework agreement in place.

**12. CONTINUITY OF OPERATIONS DURING EMERGENCY SITUATIONS**

Employee is expected to telework for the duration of an emergency pursuant to:

1) Component policy; 2) a pandemic; 3) when the regular worksite is closed or closed to the public due to natural or manmade emergency situations (e.g., snowstorm, hurricane, act of terrorism, etc.); or 4) when Government offices are open with the option for unscheduled telework when weather conditions make commuting hazardous, or similar circumstances compromise employee safety. Employees unable to work due to personal situations (e.g., illness or dependent care responsibilities), must take appropriate leave (e.g., annual or sick). If the worksite is closed or closed to the public, the employee may be granted administrative leave, on a case-by-case basis, when other circumstances (e.g., power failure) prevent the employee from working at the telework site. Managers will include a description of emergency duties with this agreement if emergency duties are different from the employee's prescribed duties and responsibilities.

| 13. SUPERVISOR OR AUTHORIZED MANAGEMENT OFFICIAL *(Name and Signature)*<br>☒ I also verify that I have completed approved telework training.<br><br>MARK A. MURPHY, Lt Col, USAF | MURPHY.MARK.A ARON.1149560030<br>Digitally signed by MURPHY.MARK.AARON.11495600 30<br>Date: 2020.03.30 12:23:52 -0700' | 14. DATE *(YYYYMMDD)*<br><br>20200330 |
|---|---|---|
| 15. EMPLOYEE SIGNATURE  ☒ I also verify that I have completed approved telework training.<br>NEWHOUSE.CARL.EVANS.1 175989770 | Digitally signed by NEWHOUSE.CARL.EVANS.1175989770<br>Date: 2020.03.28 16:03:28 -07'00' | 16. DATE *(YYYYMMDD)*<br><br>20200328 |

**DD FORM 2946, DEC 2011**

Page 1 of 4 Pages

## SECTION II - SAFETY CHECKLIST

| SAFETY FEATURE | (X) YES | NO |
|---|---|---|
| 1. Temperature, ventilation, lighting, and noise levels are adequate for maintaining a home office. | X | |
| 2. Electrical equipment is free of recognized hazards that would cause physical harm (frayed, exposed, or loose wires; loose fixtures; bare conductors; etc.). | X | |
| 3. Electrical system allows for grounding of electrical equipment (three-prong receptacles). | X | |
| 4. Office (including doorways) is free of obstructions to permit visibility and movement. | X | |
| 5. File cabinets and storage closets are arranged so drawers and doors do not enter into walkways. | X | |
| 6. Phone lines, electrical cords, and surge protectors are secured under a desk or alongside a baseboard. | X | |
| 7. If material containing asbestos is present, it is in good condition. | X | |
| 8. Office space is free of excessive amount of combustibles, floors are in good repair, and carpets are well secured. | X | |

I verify that this safety checklist is accurate and that my home office is a reasonably safe place to work.

| 9. EMPLOYEE SIGNATURE | 10. DATE *(YYYYMMDD)* |
|---|---|
| NEWHOUSE.CARL.EVANS.1175989770 Digitally signed by NEWHOUSE.CARL.EVANS.1175989770 Date: 2020.03.28 16:03:09 -07'00' | 20200328 |

**DD FORM 2946, DEC 2011**

Page 2 of 4 Pages

## SECTION III - TECHNOLOGY/EQUIPMENT CHECKLIST

| (1) TECHNOLOGY/EQUIPMENT (Indicate all that apply) | (2) REQUIREMENT (Y or N) | (3) OWNERSHIP: AGENCY OR PERSONAL (A or P) | (4) REIMBURSEMENT BY COMPONENT (Y or N) |
|---|---|---|---|
| **1. COMPUTER EQUIPMENT** | | | |
| a. LAPTOP | y | A | |
| b. DESKTOP | n | | |
| c. PDA | n | | |
| d. OTHER: | | | |
| | | | |
| **2. ACCESS** | | | |
| a. IPASS/VPN ACCOUNT | y | A | |
| b. CITRIX - WEB ACCESS | | | |
| c. OTHER: | | | |
| | | | |
| **3. CONNECTIVITY** | | | |
| a. DIAL-IN | | | |
| b. BROADBAND | y | P | |
| **4. REQUIRED ACCESS CAPABILITIES** | | | |
| a. SHARED DRIVES (e.g., H or P Drive) | y | A | |
| b. EMAIL | y | A | |
| c. COMPONENT INTRANET | y | A | |
| d. OTHER APPLICATIONS: | | | |
| | | | |
| | | | |
| | | | |
| **5. OTHER EQUIPMENT/SUPPLIES** | | | |
| a. COPIER | n | P | |
| b. SCANNER | n | P | |
| c. PRINTER | n | P | |
| d. FAX MACHINE | n | A | |
| e. CELL PHONE | n | P | |
| f. PAPER SUPPLIES | n | P | |
| g. OTHER: | | | |
| | | | |
| | | | |
| | | | |

| 6. SUPERVISOR'S SIGNATURE | | 7. DATE (YYYYMMDD) |
|---|---|---|
| MURPHY.MARK.AARON.1149560030 | Digitally signed by MURPHY.MARK.AARON.1149560030 Date: 2020.03.30 12:24:25 -07'00' | 20200330 |

| 8. EMPLOYEE SIGNATURE | | 9. DATE (YYYYMMDD) |
|---|---|---|
| NEWHOUSE.CARL.EVANS.1175989770 | Digitally signed by NEWHOUSE.CARL.EVANS.1175989770 Date: 2020.03.28 16:02:04 -07'00' | 20200328 |

**DD FORM 2946, DEC 2011**

## SECTION IV - NOTICE OF TELEWORK ARRANGEMENT CANCELLATION
*(Complete this section when the telework agreement is cancelled.)*

| 1. CANCELLATION DATE *(YYYYMMDD)* | 2. INITIATED BY *(X one)* | |
|---|---|---|
| | ☐ EMPLOYEE | ☐ MANAGEMENT |

**3. REASON(S) FOR CANCELLATION**

**4. GOVERNMENT-FURNISHED EQUIPMENT/PROPERTY RETURNED**
LIST PROPERTY AND DATE OF RETURN:   ☐ YES   ☐ NO

| 5. SUPERVISOR'S SIGNATURE | 6. DATE *(YYYYMMDD)* |
|---|---|
| | |

| 7. EMPLOYEE SIGNATURE | 8. DATE *(YYYYMMDD)* |
|---|---|
| | |

**DD FORM 2946, DEC 2011**

# APPENDIX 2

## Appellant's Job Appraisal

## Uploaded in 2023

| EMPLOYEE NAME:<br>*(Last, First, Middle Initial)* | Newhouse, Carl E | DoD ID<br>NUMBER: 1175989770 | APPRAISAL<br>YEAR *(YYYY)*: | 2020 |

## PRIVACY ACT STATEMENT

**AUTHORITY:** 5 U.S.C. 43, Performance Appraisal; 5 CFR 430.205, Agency Performance Appraisals; 10 U.S.C. 136, Under Secretary of Defense for ~~P~~ersonnel and Readiness; and DoDI 1400.25, Volume 431, DoD Civilian Personnel Management System: Performance Management and Appraisal ~~P~~rogram; and DoDI 1400.25, Volume 1100, Civilian Human Resources Management Information Technology Portfolio.

**PRINCIPAL PURPOSE(S):** To document performance elements, associated performance standards, progress review(s) and ratings of record.

**ROUTINE USE(S):** Applicable Blanket Routine Use(s) are: Law Enforcement Routine Use, Disclosure When Requesting Information Routine Use, Disclosure of Requested Information Routine Use, Congressional Inquiries Routine Use, Disclosure to the Office of Personnel Management Routine Use, Disclosure to the Department of Justice for Litigation Routine Use, Disclosure of Information to the National Archives and Records Administration Routine Use, Disclosure to the Merit Systems Protection Board Routine Use, and Data Breach Remediation Purposes Routine Use. The DoD Blanket Routine Uses set forth at the beginning of the Office of the Secretary of Defense (OSD) compilation of systems of records notices may apply to this system. The complete list of DoD Blanket Routine Uses can be found online at:
http://dpcld.defense.gov/Privacy/SORNsIndex/BlanketRoutineUses.aspx.
The applicable system of records notice is DPR 34 DoD, Defense Civilian Personnel Data System, located at:
http://dpcld.defense.gov/Privacy/SORNsIndex/DODwideSORNArticleView/tabid/6797/Article/570697/dpr-34-dod.aspx.

**DISCLOSURE:** Voluntary; however, if you are unable or unwilling to complete the administrative portion, your supervisor will complete it to ensure performance review is linked to individual performance, recognition, and awards.

## INSTRUCTIONS FOR COMPLETING THE CIVILIAN PERFORMANCE PLAN, PROGRESS REVIEW AND APPRAISAL

**Cover Sheet (Page 1):** Enter the employee's full name, DoD ID number, and the current appraisal year. *(Completed by employee or Rating Official/Supervisor.)*

**PART A - Administrative Data.** *(Comp~~le~~ted by employee and/or Rating Official/Supervisor.)*

1. Appraisal Period: a. Enter the rating start date of the appraisal cycle. b. Enter the end date of the appraisal cycle. c. Enter the Effective Date of the Rating of Record. NOTE: The DoD Performance Management and Appraisal Program cycle is April 1 - March 31 with effective date June 1. The minimum evaluation period is 90 calendar days.
2. Employee Name: Enter the name of the employee (last, first, middle initial).
3. DoD ID Number: Number found on the back of Common Access Card (NOTE: Do not enter SSN).
4. Position Title and Position Description Number: Enter the official position title and official position description number found in block 15 of SF-50.
5. Pay Plan/Occupational Code/Grade/Step: Enter the employee's pay plan, occupational code (series), grade, and step as of the date the performance plan is established. May be found in blocks 16, 17, 18 and 19 of SF-50.
6. Organization: Enter the name of the employee's organization.
7. Duty Station: Enter the duty station found in block 39 of SF-50.

**PART B - Acknowledgement of Performance Discussions.** *(Completed by employee, Rating Official/Supervisor and Higher Level Reviewer in accordance ~~wit~~h DoDI 1400.25 Volume 431 and local policy.)*
~~En~~ter full name, signature and date of acknowledgement by employee, rating official/supervisor and higher level reviewer as appropriate to document the communication of performance plan(s), progress review(s), modification(s) and rating(s) of record. If modification(s) to the performance elements and standards are required, enter date modification occurred.

**PART C – DoD Core Values and Organizational Goals.** *(Completed by Rating Official/Supervisor and discussed with employee.)*
DoD Core Values of Leadership, Professionalism, and Technical Knowledge. DoD Core Values and Component/Organization goals and mission statements will be discussed with employees and annotated on all performance plans in accordance with DoDI 1400.25, Volume 431.

**PART D - Performance Element and Standards.** *(Completed by the employee and Rating Official/Supervisor.)*
**NOTE: Use the "Duplicate" button at the top of the page to duplicate this page for each element developed.**

1. Total Number of Elements. Enter the total number of elements.
2. Element Number. Enter the corresponding number to the element against which the employee is being evaluated.
3. Element Title. Enter the title of the element.
4. Effective Date. Enter date the element was approved (whether initial establishment or newly modified - whichever is more recent).
5. Element and Standard(s). Write elements and associated standards that are clearly aligned with the organization's mission.
6. Employee Input (optional). Employees are encouraged to provide a written account of their accomplishments related to each element and associated standards provided in their performance plan. For example, the employee may describe how their contributions enabled mission accomplishment.
7. Performance Element Narrative. Supervisors are required to justify performance element ratings of "Outstanding" or "Unacceptable" with a narrative. A narrative is highly encouraged for "Fully Successful" element ratings. The performance narrative must address the employee's performance against the specific element. Employees are not given a performance narrative or performance elements ratings on progress reviews in accordance with DoDI 1400.25, Volume 431.
8. Element Rating. Mark (X) a rating for ~~e~~ach element (5, 3, 1, or NR (Not Rated)).
**NOTE:** Review employee position descriptions to ensure they are relevant.

**PART E – Performance Rating Summary.** (Completed by Rating Official/Supervisor.) See below for column usage.

**Element Number -** From Part D block 2., number of the element(s) for which the employee is being evaluated (10 elements maximum).

**Element Title -** Enter title of element (refer to Part D block 3).

**Element Rating -** Enter the rating for the element (5, 3, or 1) (refer to Part D block 8).

**Summary Rating:** Summary Rating is obtained by adding the values in the Element Rating column and dividing by the number of rated elements (round to the nearest tenth). Enter the result in Block A1.

**Rating of Record:** Use the Summary Rating in block A1 to determine the Rating of Record in Block A2. Compare the A1 value to the Summary Level Chart to obtain the Rating of Record.

~~NO~~TE: When a rating on any element is "1" - Unacceptable, the overall Rating of Record shall be "1" - Unacceptable, regardless of the Summary Rating. ~~Hi~~gher Level Review is required in accordance with DoDI 1400.25, Volume 431.

**Continuation Sheet.** If additional space is needed for general information, progress reviews, or responses, use this page and duplicate as needed. Each continuation sheet and item being continued must be numbered.

**DD FORM 2906, MAR 2016**      PREVIOUS EDITION IS OBSOLETE      Page 1 of 5 Pages

## PART A – ADMINISTRATIVE DATA
*(To be completed by Employee or Rating Official/Supervisor)*

| 1. APPRAISAL PERIOD | a. START DATE *(YYYYMMDD)* 20190401 | b. END DATE *(YYYYMMDD)* 20200331 | c. RATING OF RECORD EFFECTIVE DATE *(YYYYMMDD)* 20200601 |
|---|---|---|---|

| 2. EMPLOYEE NAME *(Last, First, Middle Initial)* Newhouse, Carl E | 3. DoD ID NUMBER 1175989770 |
|---|---|

| 4. POSITION TITLE AND POSITION DESCRIPTION NUMBER 9GD25.COMMUNITY SUPPORT COORDINATOR.2176644.AF1L.APPR | 5. PAY PLAN/OCCUPATIONAL CODE/GRADE/STEP GS/0301/12/04 |
|---|---|

| 6. ORGANIZATION 62 AIRLIFT WG AF1LMH1LFCWF01 | 7. DUTY STATION MCCHORD AF BASE / PIERCE / WASHINGTON |
|---|---|

## PART B – ACKNOWLEDGEMENT OF PERFORMANCE DISCUSSION
*(Completed by Employee, Rating Official/Supervisor, and Higher Level Reviewer (Manager) in accordance with DoDI 1400.25, Volume 431)*

| | PERFORMANCE PLAN/ VALUES DISCUSSION | PROGRESS REVIEW | MODIFICATIONS *(If applicable)* | RATING OF RECORD |
|---|---|---|---|---|
| **EMPLOYEE:** Signature: | Carl E Newhouse | Carl E Newhouse | | Carl E Newhouse |
| Date *(YYYYMMDD)* | 20200129 | 20200127 | | 20200520 |
| **RATING OFFICIAL/ SUPERVISOR:** Printed Name: | COLLINS, BRIAN P | COLLINS, BRIAN P | | COLLINS, BRIAN P |
| Signature: | BRIAN P COLLINS | BRIAN P COLLINS | | BRIAN P COLLINS |
| Date: *(YYYYMMDD)* | 20200122 | 20200127 | | 20200520 |
| Communication Method *(face-to-face, telephone, other)* | X Face-to-face ☐ Telephone ☐ Other: | X Face-to-face ☐ Telephone ☐ Other: | ☐ Face-to-face ☐ Telephone ☐ Other: | ☐ Face-to-face X Telephone ☐ Other: |
| **HIGHER LEVEL REVIEWER:** Printed Name: | Staine-Pyne, Erin M | Staine-Pyne, Erin M | | Staine-Pyne, Erin M |
| Signature: | Erin M Staine-Pyne | Erin M Staine-Pyne | | Erin M Staine-Pyne |
| Date: *(YYYYMMDD)* | 20200122 | 20200127 | | 20200520 |

**MODIFICATION(S) TO PERFORMANCE ELEMENTS AND STANDARDS** *(If applicable): (Limited to 2,000 characters)*

---

**DD FORM 2906, MAR 2016**       PREVIOUS EDITION IS OBSOLETE       Page 2 of 5 Pages

| EMPLOYEE NAME: | Newhouse, Carl E | DoD ID NUMBER: | 1175989770 | APPRAISAL YEAR (YYYY): | 2020 |
|---|---|---|---|---|---|
| *(Last, First, Middle Initial)* | | | | | |

**PART C - DoD CORE VALUES and ORGANIZATIONAL GOALS** *(Completed by Rating Official/Supervisor and discussed with employee.)*
**DoD Core Values of Leadership, Professionalism, and Technical Knowledge**

DoD Core Values and Component/Organization goals and mission statements will be discussed with the employee and annotated on all performance plans in accordance with DoDI 1400.25, Volume 431. *(Limited to 1,000 characters)*

One of twelve Eighteenth Air Force Wings. Operates & supports aircraft through four operations, three maintenance, one comptroller and one medical squadron for the worldwide air drop & air land delivery of troops, equipment and supplies: also the nation's only strategic Prime Nuclear Airlift Force (PNAF) wing. Supports the Western Air Defense Sector, 446th Airlift Wing and 10 tenant units. Further advances joint operations with Joint Base Lewis-McChord's Installation Management Command and the 627th Air Base Group.

**PART D - PERFORMANCE ELEMENT AND STANDARDS** *(Completed by the employee and Rating Official/Supervisor.)*

| 1. TOTAL NUMBER OF ELEMENTS *(Max. 10 elements)* | 2. ELEMENT NUMBER | 3. ELEMENT TITLE | 4. EFFECTIVE DATE *(YYYYMMDD)* |
|---|---|---|---|
| 4 | 1 | CAB Executive Director | 20200128 |

**5. ELEMENT AND STANDARD(S)** (Limited to 1,500 Characters)

On a quarterly basis, work collaboratively with installation leaders, CAT members, and community partners to build and deliver programs that support overall quality of life shared by all Air Force attached to Team McChord and their family members using a holistic and integrated Comprehensive Airman Fitness Framework.
Continually review and analyze current trends identified by CAT agencies and by setting and tracking goals established during the quarterly CAB meeting as well as maintain awareness of Air Force, Air Mobility Command, and commercial programs targeted at helping Airmen and their families.
Provide CAB management and oversight in conjunction with CC/CV.

**6. EMPLOYEE INPUT** *(Optional) (Completed by Employee - Limited to 2,000 characters)*

a quarterly basis, work collaboratively with 62 AW and 627 ABG installation leaders, Air Force and Army CAT members, and community partners to build and deliver programming to support overall resilience and quality of life of TM Airmen, their families, Civilians, and Retirees - using a holistic and integrated Comprehensive Airman Fitness Framework.
Frequently review, analyze, and report adverse trending data identified by CAT agencies. Establish benchmarks and goals toward solutions, execute, and track status updates via quarterly CAB meetings. Maintain awareness of HAF-A12, AMC, and commercial programming targeted at helping Airmen, Big A.
Provide CAB oversight and management in conjunction with 62 AW/CC. Host pre-CAB Briefs with the Commander to bring concerns to her attention in preparation for TM CAB's, facilitate quarterly and out-of-sequence CAB's, expedite Commander updates and due outs (in-between CAB sessions), and manage minutes as a HAF/AMC inspection checklist item IAW AFI 90-5001. Maintain communication flow and relationship with HAF and AMC Functionals, and partner in shared information and best-practice approaches in serving Airmen.

**7. PERFORMANCE ELEMENT NARRATIVE** *(Completed by Rating Official - limited to 2,000 characters)*

- Designed, executed, and utilized quarterly CABs to meet Commander needs at all Wing levels through the integration of Joint Base partners and AF helping agencies
- Overcame several obstacles associated with COVID (safety, technological, and equipment) to execute all CABs on-time with all key resources needed to be effective
- In addition to tracking and identified trends, continue to tell the "what does this mean" to Commanders along with offering recommendations to fix any issuer

**8. ELEMENT RATING** *(X one)*:

| [X] 5 - OUTSTANDING *(Requires justification)* | [ ] 3 - FULLY SUCCESSFUL | [ ] 1 - UNACCEPTABLE *(Requires justification)* | [ ] NR - NOT RATED |
|---|---|---|---|

**DD FORM 2906, MAR 2016**      PREVIOUS EDITION IS OBSOLETE      Copy 1 of 4      Page 3 of 5 Pages

DEPARTMENT OF DEFENSE

| EMPLOYEE NAME:<br>*(Last, First, Middle Initial)* | Newhouse, Carl E | DoD ID<br>NUMBER: | 1175989770 | APPRAISAL<br>YEAR *(YYYY):* | 2020 |
|---|---|---|---|---|---|

### PART E - PERFORMANCE RATING SUMMARY
*(Completed by Rating Official/Supervisor - copy Part D blocks 2, 3, and 8.)*

| a.<br>ELEMENT<br>NUMBER | b.<br>ELEMENT<br>TITLE | c.<br>ELEMENT RATING<br>*(5, 3, or 1)*<br>*(X box if Not Rated)* | |
|---|---|---|---|
| 1 | CAB Executive Director | 5 –<br>Outstanding | ☐ NR |
| 2 | Installation CAT Chair | 5 –<br>Outstanding | ☐ NR |
| 3 | Installation Diversity Chair | 5 –<br>Outstanding | ☐ NR |
| 4 | Manage Resilience Program | 5 –<br>Outstanding | ☐ NR |
| 5 | | | ☐ NR |
| 6 | | | ☐ NR |
| 7 | | | ☐ NR |
| 8 | | | ☐ NR |
| 9 | | | ☐ NR |
| 10 | | | ☐ NR |

| **SUMMARY RATING:** Obtain by adding the values in the Performance Element Rating column and dividing by the number of rated elements (round to the nearest tenth). Enter result in block A1. | A1 | 5.0 |
|---|---|---|
| **RATING OF RECORD:** Obtain by using the Summary Rating against the chart below to determine Summary Level. | A2 | 5 – Outstanding |

### SUMMARY LEVEL CHART

| Range | Summary Level | Rating of Record | Summary Level Rating Criteria |
|---|---|---|---|
| 4.3 - 5.0 | Outstanding | 5 | The summary rating of all element ratings of 4.3 or greater results in a rating of record of "5" - Outstanding, with no element rated "1" - Unacceptable. |
| 3.0 - 4.2 | Fully Successful | 3 | The summary rating of all element ratings of between 4.2 and 3.0 results in a rating of record of "3" - Fully Successful, with no element rated "1" - Unacceptable. |
| 2.9 or lower | Unacceptable | 1 | Any element rated as "1" - Unacceptable. |

When a rating on any element is "1" - Unacceptable, the overall Rating of Record shall be "1" - Unacceptable, regardless of the Summary Rating.

Provide a copy of all pages to employee. Supervisor retains original copy of all pages for records.

## CIVILIAN PERFORMANCE PLAN, PROGRESS REVIEW AND APPRAISAL

| EMPLOYEE NAME: *(Last, First, Middle Initial)* | Newhouse, Carl E | DoD ID NUMBER: | 1175989770 | APPRAISAL YEAR *(YYYY)*: | 2020 |
|---|---|---|---|---|---|

### CONTINUATION SHEET #

*(If additional space is needed for general information, progress reviews, or responses, use this page and duplicate as needed. Each continuation sheet and item being continued must be numbered.)*

# <u>APPENDIX 3</u>

## Agency's Accommodation Letter

## Uploaded in 2023



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 62D AIRLIFT WING (AMC)**

9 December 2021

MEMORANDUM FOR MR. CARL NEWHOUSE

FROM: 62 AW/FSC

SUBJECT: Reasonable Accommodation Request

1. This is a follow-up to our Reasonable Accommodation (RA) meeting on 21 Oct 2021. This meeting was attended by your supervisor, Col Brian Collins, myself, as the Disability Program Manager (DPM), and Mr. Cameron Ames, your Union representative.

2. During the RA meeting, you acknowledged the limitations you faced based on your medical conditions and the impact on your current role as Community Support Coordinator (CSC). Specifically, you noted that because of your Cyncopy, your cognitive processes are affected, and this impacts all areas of your job. When asked "what limitation is interfering with your ability to perform your job," you stated that it was the ability to safely access the office (because the condition can occur unexpectedly while driving) and the ability to control your work environment when in the physical office setting.

3. Based on your medical challenges, your supervisor, Col Collins, and Director of Staff, Ms. Amanda Williams, have supported situational telework for the past few months. In the RA meeting, you requested that telework continue to be supported as an accommodation, requesting to work in the office for half days, and telework the other half of each day. You offered that by teleworking, you are better able to control your work environment, to include the lighting and customer interaction.

4. Following our meeting, I requested that you provide medical documentation that supports your RA request. The letter you provided dated 26 Oct 2021 was found to be insufficient, and I asked for a more detailed letter from your provider. You submitted the updated medical documentation on 12 Nov 2021 that contained the requested information; this is the date which we consider your request to be complete.

5. Following our meeting and after the requested medical documentation was received, I discussed prospective RA options with your supervisor, Col Collins and Director of Staff, Ms. Williams. Although your medical provider recommended five (5) half days of telework each week, that schedule cannot be supported in your role as a Community Support Coordinator (CSC). The critical components of the CSC position are customer and community focused and include defined roles as the "Caring for People" Coordinator and the Executive Director of the Community Action Board (CAB). Additionally, the CSC is charged to enhance Airmen and Family resilience through outreach and networking. These critical duties require regular and in-person customer interaction, which cannot be duplicated in a telework environment.

6. Based on the defined requirements of your position and your specific RA request as supported by the recommendations from your health care provider, the agency supports the following accommodations:

a. Telework: Supervisor/agency supports situational telework as a workplace flexibility and will implement this option effective 20 Dec 2021. Your telework agreement will be updated and will identify a schedule of two (2), half-days per week of telework and three (3) full days in the office. Specifically, it will require you to be in the office Mondays, Wednesdays, and Fridays; and it will allow for telework half days on Tuesdays and Thursdays. Modifications will be permitted with prior approval from your supervisor or representative.

b. Travel to Workplace: The agency is not responsible for transportation to/from the workplace. Therefore, this is not considered under the RA process.

c. Re-evaluate the situation after 30 days (from date of this letter) to review the workplace accommodation and if any adjustments need to be made based on your current medical prognosis.

7. I believe this reasonable accommodation will balance both the organizational effectiveness and your needs as an Air Force employee. Please contact me at vanessa.gallagher.2@us.af.mil if you have any questions or concerns.

GALLAGHER.VANESS A.LEIGH.1261195875
Digitally signed by GALLAGHER.VANESSA.LEIGH.1261 195875
Date: 2021.12.09 09:34:32 -08'00'

VANESSA L. GALLAGHER, GS-13, DAF
Disability Program Manager



# APPENDIX 4

## Appellant's Sworn Declaration

## Uploaded in 2023

**COPY**

OFO Routing No. 2023005247
Agency No. 5 MIL2200257F23-2
EOC No. 550-2022-00404X

## Declaration of Carl Newhouse

## Regarding

## Department of Defense Teleworking Agreement

**Question**: Please state your name:

Answer:  Carl Newhouse

**Question:**  Throughout the year of 2020, who was your employer?

Answer: The United States Air Force

**Question:**  Are they part of the Department Defense?

Answer:  Yes

**Question:** What was the location of your regular worksite?

Answer:  100 Col. Joe Jackson Blvd. Suite 3010 McCord Field JBLM, WA 98438

**Question**: On March 28, 2020, who was the Director of Staff at JBLM Base?

Answer:  Lt. Col. Mark A. Murphy

**Question**: On March 28, 2020  did Lt. Col. Mark Murphy **direct** you to do your job in a **teleworking environment** (working remotely)?

Answer:  Yes

**Question**: Do you know why?  If so, give the reason?

Answer: There was a nationwide shut down because of the Covid Pandemic

**Question**: What was the requirement to do "teleworking" or work remotely?

Answer: I was required to sign a Department of Defense Teleworking Agreement

**Question**: Did you sign it?

Answer: Yes.

**Question**: On what date?

Answer: March 28, 2020

**Question**: Were you the only one required to sign the Teleworking Agreement?

Answer: No

**Question**: In order to finalize the Agreement and make the Agreement official, who else was required to sign the Agreement?

Answer: Lt. Col. Mark Murphy

**Question:** According to the Teleworking Agreement that you signed, what period of time did it cover?

Answer: From March 28, 2020 to May 31, 2020

**Question:** Did you stop Teleworking on May 31. 2020?

Answer: No. The need for Teleworking continued beyond May 31, 2020.

**Question:** And according to the Teleworking Agreement how many days a week were you required to work during this period?

Answer: Five days a week

**Question:** At that time, what was your official job title?

Answer: Community Support Coordinator

**Question:** Where were you required to perform this Telework (Remote) work?

Answer: At my home

**Question:** On the Teleworking Agreement what address was the location of your home?

Answer: 1328 Market Street Unit 215 Tacoma, WA 98402

**Question:** On the Teleworking Agreement there is a section called: "Specific Terms & Conditions" to be filled out by management or an authorized official, what were the "specific" terms and conditions of the Teleworking Agreement?

Answer: There were none

**Question:** According to the Teleworking Agreement, did your *direct* supervisor in any way modify the *"critical duties"* of your job?

Answer: No.

**Question:** What are the *critical duties* of your job?

Answer: They are listed on the job description for the Community Support Coordinator

**Question:** Were there any *"critical parts"* of your job that *"could not be duplicated in a teleworking environment?*

Answer: No.

**Question:** During the Teleworking period, were you at any time required to have *"in person customer interactions?"*

Answer: No.

Question: Were you shocked to learn that the Agency reported to EEOC and MSPB that the *critical duties of your job could not be duplicated in a teleworking environment?*

Answer: Yes.

**Question:** Why?

Answer: Because they not only knew that I did the job in a *teleworking environment*, they directed me to do the job in the *teleworking environment*.

**Question:** What proof do you have to back up your claim?

Answer: The Teleworking Agreement

**Question**: Do you know if the Agency provided EEOC or the MSPB with any documentation to prove that the CSC job *could not be duplicated in a teleworking environment?*

Answer: Based on the information they provided in discovery and the information that they uploaded for their brief, I saw none.

**Question:** In EEOC's decision, did they refer to any documentation that the Agency provided to back up the claim that the job *could not be duplicated in a teleworking environment?*

Answer: There was no reference to any documentation that the Agency provided that EEOC claimed that they used to base their final decision on.

**Question:** How did you communicate during the Teleworking (remote) period?

Answer: By phone, text, e-mail, website and with the use of Zoom technology.

**Question:** How was your job performance as a Community Support Coordinator?

Answer: It received a rating of "Outstanding"

**Question:** How different was your doctor's recommendation for accommodations from the work that you actually did remotely during the Teleworking period?

Answer: No different

**Question:** Was the Agency (Air Force) aware of the Teleworking Agreement signed by both you and Lt. Col. Mark Murphy?

Answer: Yes, it is a permanent part of the Air Force's Records

**Question:** Did you upload a copy of the signed Teleworking Agreement between you and the Department of Defense in your EEOC Case and your MSPB Case?

Answer: Yes

**Question:** In the EEOC's Case, did the Administrative Judge (Judge Mong) refer to the Teleworking Agreement in his decision regarding *reasonable accommodations?*

Answer: No.

**Question:** In the Agency's upload to MSPB, did the agency include a copy of your Teleworking Agreement as part of the record?

Answer: No, not to my knowledge.

**Question:** If the Agency said, "under the penalty of perjury" that: *"the critical duties of the Community Support Coordinator include in person customer interaction which cannot be duplicated in a Teleworking environment*, would this be a true statement?

Answer: No. All of the *critical duties* of the Community Support Coordinator were performed in my home, by me, during the pandemic according to the DOD's Teleworking Agreement.

**Question:** Why do you think they *intentionally* made this false statement under the penalty of perjury?

Answer: To justify not giving me my doctor's recommended accommodations and to intentionally deceive EEOC and MSPB, hoping the two agencies would never look at the Teleworking Agreement which proved that the work could be done in a *teleworking environment.*

**Question:** How were these so-called *critical duties* that they mentioned in their false statement under the penalty of perjury, performed?

Answer: With the laptop that the Air Force provided for the teleworking assignment and with the use of phone, text, e-mail, website and Zoom technology.

**Question:** Is the term: *"in person customer interaction"* a term used in the job description for the position of Community Support Coordinator?

Answer: No

**Question:** Is there anything else you would like to add?

Answer: Yes. I am a military veteran who signed up to serve the country that I love. I am disabled now and wondering if my country loves me.

Under the penalty of perjury of the United States, the answers to my Declaration regarding the Teleworking Agreement are true and correct.

Signed this 9th day of October 2023 by

Carl Newhouse, Appellant
Dr. Wayne Perryman Representative



# UNITED STATES POSTAL SERVICE ®

## PRIORITY ® MAIL

PRIORITY MAIL
MEDIUM FLAT RATE
POSTAGE REQUIRED

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

FROM:

Carl Newhouse, Pro Se
1328 Market Street Apt. 215
Tacoma, WA 98402



UNITED STATES
POSTAL SERVICE

Retail

**P**

US POSTAGE PAID
**$19.15**

Origin: 98032
04/11/25
5440620233-08

PRIORITY MAIL®

2 Lb 8.10 Oz
RDC 03

EXPECTED DELIVERY DAY: 04/14/25

SHIP TO:
WASHINGTON DC 20439

USPS TRACKING® #

9505 5158 1753 5101 2704 02

TO:

U.S. Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.